IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

     v.                                          Criminal Case No. 3:13cr175

SHAWN LEE RIVES,

        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Shawn Lee Rives' Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release"). (ECF No. 81.) The United States responded in opposition and Rives replied. (ECF Nos. 86, 87.) Rives later filed four Supplements to his Motion for Compassionate Release. (ECF Nos. 91, 94, 96, 109.) The United States responded to three of Rives' four Supplements. (ECF No. 103.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

## I. Background

### A. Rives' Underlying Offense

On October 16, 2013, Rives was charged in a five-count indictment: two counts of possession with intent to distribute cocaine base, in violation of Title 21, United States Code, §§ 841(a) and 841(b)(1)(B)(iii), and three counts of possession with intent to distribute cocaine

hydrochloride, in violation of Title 21, United States Code, §§ 841(a) and 841(b)(1)(C).  (ECF No. 1.)

On May 22, 2014, Rives entered into a written plea agreement with the United States in which he pleaded guilty to one count of "Possession With The Intent to Distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as 'crack.'"  (ECF No. 24, at 1.)

The Plea Agreement and the Statement of Facts describe the conduct of Rives' underlying offense.  (ECF Nos. 24, 25.)  On March 21, 2012, the police executed a search warrant at a residence in Petersburg, Virginia, where Rives was present.  (ECF No. 25 ¶ 2.) During the search, the police discovered approximately eight bags containing suspected cocaine (later confirmed to be 27.1 grams of "crack" cocaine and 77.1 grams of cocaine hydrochloride), as well as United States currency, a digital scale, packaging materials, and Inositol, "which is used to 'cut' or stretch cocaine."  (ECF No. 25 ¶¶ 4, 8.)

On June 13, 2012, the police searched for Rives in order to arrest him on outstanding warrants and found him in a car "in the middle of conducting what appeared to be a cocaine drug deal."  (ECF No. 25 ¶ 5.)  At the time of Rives' arrest, the police recovered digital scales, a quantity of suspected cocaine (later confirmed to be 21.5 grams of cocaine hydrochloride), and $2,472.00 in United States currency.  (ECF No. 25 ¶¶ 5, 8.)

On October 12, 2012, while executing another search warrant issued in connection with Rives' cocaine distribution, the Petersburg police recovered "numerous bottles of Inositol . . . , plastic baggy corners, sandwich bags, and a bag containing suspected cocaine" (later confirmed to be 148 grams of cocaine hydrochloride and 47.5 grams of cocaine base) from the searched

2

residence and "two bundles of cash, totaling approximately $1[,]800.00" from Rives' person. (ECF No. 25 ¶ 7.)

Prior to the 2014 sentencing, the probation officer prepared the Presentence Report ("PSR") for Rives, summarizing his criminal history. (ECF No. 30.) According to the law at the time, Rives' total offense level of 31 and criminal history category of VI resulted in a Sentencing Guidelines range of 188–235 months' imprisonment and at least four years of supervised release. (ECF No. 30, at 35.)

Rives' base offense level at the time, based on drug quantity and pursuant to U.S.S.G. § 2D.1.1(c)(3),[1] was 34. (ECF No. 30 ¶ 19.) Rives received a three-point reduction for acceptance of responsibility and assistance to authorities by entering into a timely plea agreement. (ECF No. 30 ¶¶ 27–28.) Rives was classified as a career offender pursuant to U.S.S.G. § 4B1.1(a)[2] because his prior convictions included at least two prior controlled

---

[1] Currently, and at the time of Rives' sentencing, Section 2D.1.1(c)(3) of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") consists of a drug quantity table that dictates a base offense level of 34 for "[a]t least 2.8KG but less than 8.4 KG of Cocaine Base." U.S.S.G. § 2D.1.1(c)(3).

[2] Currently, and at the time of Rives' sentencing, a defendant is a "career offender" under the Sentencing Guidelines if:

> (1)    the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2)    the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3)    the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a)
The term "controlled substance offense" means "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance)

3

substance offenses.[3] (ECF No. 30 ¶ 73.) The classification, however, did not change Rives'
criminal history category because he was already a category VI (the highest category). (ECF
No. 30 ¶ 73.) In addition to his prior substance offenses, Rives' prior adult convictions included,
among others, obstructing justice, receiving stolen goods, assault and battery, petit larceny,
identity fraud, and statutory burglary. (ECF No. 30 ¶¶ 30–40, 44–69.)

The PSR also provided information on Rives' physical and mental condition. (ECF
No. 30 ¶¶ 107–111.) Rives reported "having asthma since childhood and once being
hospitalized for the same at age [nine]." (ECF No. 30 ¶ 109.) Rives also reported that he was
run over by a vehicle in 2003 and began suffering back pain as a result. (ECF No. 30 ¶ 110.) He
reported experiencing pain from two slipped discs in his back and has not yet received surgery
due to "personal fear." (ECF No. 30 ¶ 110.) In 2005, Rives attempted to hang himself twice in
jail and he reported experiencing auditory and visual hallucinations. (ECF No. 30 ¶ 113.)
Central State Hospital diagnosed Rives with "[p]olysubstance [d]ependence and malingering"
and "[a]ntisocial [p]ersonality [d]isorder" and noted that he "may engage in self-harm to avoid
jail." (ECF No. 30 ¶ 113.)

On August 27, 2014, this Court sentenced Rives in the middle of the Sentencing
Guidelines range and imposed a term of 210 months' imprisonment and four years of supervised
release. (ECF No. 35.) On September 16, 2020, the Court reduced Rives' sentence by twenty
percent to an overall term of 170 months. (ECF No. 72, at 2.)

---

or the possession of a controlled substance (or a counterfeit substance) with intent to
manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b)

[3] Rives' prior controlled substance offense convictions were "Possession of Cocaine With
Intent to Distribute" on April 5, 1999, "Possession More Than ½ Ounce, But Less Than 5
Pounds of Marijuana With Intent to Distribute" on August 2, 2001, and "Conspiracy to
Distribute Cocaine" on September 9, 2005. (ECF No. 30, at 12, 16.)

Rives is currently housed at FCI Petersburg in Hopewell, Virginia. *See* Bureau of Prisons, Fed. Inmate Locator, https://www.bop.gov/inmateloc/. The Bureau of Prisons ("BOP") lists Rives' projected release date as May 8, 2026. *Id.*

### B. Rives' Previous Motions for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(2)

On November 18, 2014, Rives sent a *pro se* letter to the Court that was interpreted as a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offenses Pursuant to 18 U.S.C. § 3582(c)(2)[4] and Amendment 782 to the Sentencing Guidelines[5] (the "2014 Motion to Reduce"). (ECF Nos. 37, 38.) The Court ordered the United States to respond to Rives' 2014 Motion to Reduce, and the Probation Office to recalculate Rives' sentencing range under the amended guidelines. (ECF No. 38.)

On December 16, 2014, the probation officer determined that Rives was ineligible for a reduction in sentence based on the amendments made to the Sentencing Guidelines because he "was found to be a [c]areer [o]ffender." (ECF No. 39.) On May 19, 2015, the United States

---

[4] Section 3582(c)(2) of Title 18 of the United States Code provides that the court may not modify a term of imprisonment once it has been imposed except

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment.

18 U.S.C. § 3582(c)(2).

[5] Amendment 782, which took effect on November 1, 2014, generated a two-level reduction in all offense levels found in U.S.S.G §§ 2D1.1 and 2D1.11. The United States Sentencing Commission made clear that the reduction retroactively applied. *See* U.S. SENTENCING GUIDELINES MANUAL app. C. amend 782 (Supp. 2014).

filed its opposition to Rives' 2014 Motion to Reduce and stated that it agreed with the probation officer's finding that Rives was ineligible for relief because Rives "was found to qualify for a sentencing enhancement under the [c]areer [o]ffender provisions of the guidelines,"[6] not based on the provision in § 2D1.1. (ECF No. 41, at 2.) The United States submitted that "[b]ecause the career offender provisions [were] unaffected by the . . . guideline amendment, [Rives'] offense level remain[ed] exactly what it was at the time of sentencing." (ECF No. 41, at 2.)

The Court denied Rives' 2014 Motion to Reduce on June 23, 2015, because Rives' "original base offense level was calculated under U.S.S.G. § 4B1.1 as a result of his status as [a] career offender, and the base offense level applicable to [Rives] ha[d] not subsequently been lowered." (ECF No. 43, at 2.)

On June 15, 2018, Rives filed a renewed Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (the "2018 Motion to Reduce"). (ECF No. 51.) The Court ordered the United States to respond, and the Probation Office to recalculate Rives' sentencing range under the amended guidelines. (ECF No. 54.)

On August 31, 2018, the probation officer filed Rives' Drug Guidelines Amendment Application Worksheet which stated that the revised guidelines would give Rives a total offense level of 29 (rather than 31) and a guideline range of 151–188 months' imprisonment (rather than 188–235 months) if Rives *had not* been deemed a career offender. (ECF No. 56, at 1.) The United States again agreed with the probation officer that Rives' sentencing guidelines remained

---

[6] The Sentencing Guidelines provide that "if the offense level for a career offender from [the included table] is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply." U.S.S.G. § 4B1.1(b). In Rives' case, where his offense carried a statutory maximum of forty years of imprisonment, the table required Rives to have an offense level of 34. *See id.*

unchanged because the guideline range rested on Rives' career offender status. (ECF No. 61, at 5.)

On April 17, 2019, the Court denied Rives' 2018 Motion to Reduce. (ECF No. 68.) The Court explained that Rives' career offender status "exposed him to the same base offense level, 34," as the drug quantity in his case, and the career offender offense level controlled. (ECF No. 68, at 3–4.) Because Rives' career offender status remained unchanged, so did his sentencing guideline range. (ECF No. 68, at 4.)

### C.    Rives' Motion for Compassionate Release Based on Exigent Family Circumstances and COVID-19[7]

On June 8, 2021, Rives, acting through Counsel, filed the instant Motion for Compassionate Release. (ECF No. 81.)

In the Motion, Rives discusses his family circumstances, which "have drastically changed since his sentencing." (ECF No. 81, at 1.) Rives asserts that his stepmother "has been diagnosed with an aggressive form of cancer" and her "only caregivers would be . . . Rives and . . . Rives' sister." (ECF No. 81, at 1.) Rives states that his sister is unable "to continue to physically and financially support . . . Rives' stepmother, their special needs sister, and her own children." (ECF No. 81, at 8.)

---

[7] At the end of his Motion for Compassionate Release, Rives summarily adds an argument for a sentence reduction due to Section 401 of the First Step Act's changes to the type of prior convictions that trigger enhanced mandatory minimum sentences. (ECF No. 81, at 13–14.) Rives was not subject to an enhanced mandatory minimum sentence and the Court cannot see why Rives thinks the definition of a "serious drug felony" or a "serious violent felony" would otherwise affect his criminal history score or his sentencing guideline range. The Court therefore treats Rives' original Motion for Compassionate Release as a motion based only on his exigent family circumstances and the COVID-19 pandemic. But were it to examine Rives' First Step Act argument, he likely would not prevail.

7

Rives also describes his health conditions, asthma and obesity, that make him "particularly susceptible to COVID-19" and "more likely to suffer dire consequences from the virus." (ECF No. 81, at 1–2.) "While incarcerated, . . . Rives has experienced documented asthmatic episodes" and, as "recent as January 29, 2021, . . . Rives had an asthma episode coupled with acute bronchitis." (ECF No. 81, at 9.) Rives also broadly discusses current unsanitary conditions and the impossibility of social distancing at incarceration facilities. (ECF No. 81, at 9–10.)

The United States filed a Response in Opposition on June 23, 2021. (ECF No. 86.) The United States objects to Rives' requested sentence reduction. The United States argues that Rives, who is fully vaccinated, has not presented an extraordinary and compelling reason for compassionate release because his "mild asthma" does not amount to a particularized susceptibility to COVID-19. Finally, the United States notes that no particularized risk exists at FCI Petersburg. (ECF No. 86, at 14–17.) The United States also contends that the sentencing factors set forth in 18 U.S.C. 3553(a)[8] weigh against Rives' immediate release. (ECF No. 86, at 17–23.)

---

[8] Section 3553(a) of Title 18 of the United States Code states:

The [c]ourt in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

8

D.    **Rives' Supplement to his Motion for Compassionate Release Based on**
      ***Norman* and *Campbell***

On December 16, 2021, Rives sent a *pro se* letter to the Court stating that the United

States Court of Appeals for the Fourth Circuit's decision in *United States v. Norman* supported

an "extraordinary and compelling reason" to grant his request for a sentence reduction. 935 F.3d

232, 239 (4th Cir. 2019) (finding that conspiracy to possess a controlled substance with intent to

distribute is not a "controlled substance offense" as required to support a career offender

enhancement under the Sentencing Guidelines.) (ECF No. 92.) On February 22, 2022, Rives,

through counsel, filed a Notice of Supplemental Authority based on the fact that, under *Norman*,

---

> (C) to protect the public from further crimes of the
> defendant; and
>
> (D) to provide the defendant with needed educational or
> vocational training, medical care, or other correctional
> treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established
> for—
>
> > (A) the applicable category of offense committed by the
> > applicable category of defendant as set forth in the
> > guidelines . . .
>
> (5) any pertinent policy statement—
>
> > (A) issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among
> defendants with similar records who have been found guilty of
> similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Rives would no longer qualify as a career offender, noting that the Court previously denied Rives' requests for sentence reductions because of his career offender status. (ECF No. 94.)

The United States filed a Response to Rives' Notice of Supplemental Authority on November 28, 2022. (ECF No. 103.) The United States argues that the supplemental authority is "inapplicable" because Rives' career offender status "resulted in no change" to Rives' criminal history category, Rives' base offense level was determined based on drug weight, and "there has been no intervening change in the law that has any impact on the sentence imposed or [Rives'] guidelines." (ECF No. 103, at 3-4.) The United States also observes that even if a change in Rives' career offender status were to change his sentencing guidelines, *Norman* does not alter Rives' career offender status because the historical convictions that led to Rives' enhancement were not drug conspiracy convictions, which were the types of convictions at issue in *Norman*. (ECF No. 103, at 5.) Rives was deemed a career offender based on two possession with intent to distribute convictions – not conspiracy to distribute charges. Under *Norman*, those convictions support the career offender enhancement. [9]

On January 27, 2023, Rives, through counsel, provided additional supplemental authority: a United States District Court for the Eastern District of Virginia Judge's ruling in favor of a defendant's objection to a PSR at sentencing relying on the Fourth Circuit's decision in *United States v. Campbell*. 22 F.4th 438 (4th Cir. 2022) (finding that a conviction for delivery of crack cocaine under a West Virginia statute that also criminalized attempted delivery

_____

[9] In *Norman*, the Fourth Circuit highlighted that the defendant "concede[d] that *actual possession* of cocaine and cocaine base with intent to distribute qualifies as a controlled substance offense" and stated that it is the definition of "conspiracy" that led to its decision that the defendant's conviction was not a "controlled substance offense." 935 F.3d at 237 (emphasis added).

10

did not qualify as a "controlled substance offense" to support a career offender enhancement.)

(ECF No. 109, at 1.)  The defendant's objection was based on an argument that, after *Campbell*,

convictions for possession with the intent to distribute do not qualify as "controlled substance

offenses" under U.S.S.G. § 4B1.2(b) because the Virginia statute criminalizing drug distribution

similarly criminalizes attempt.  (ECF No. 109, at 2.)  Rives asks the Court to make the same

finding here for the possession with intent to distribute convictions that support his career

offender enhancement.[10]

## II. Legal Standard:  Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the

opportunity to directly petition the courts for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A).[11]  Prior to the First Step Act in 2018, an individual could not petition the district

---

[10] In the time between Rives' second supplement and this opinion, the Fourth Circuit has issued two opinions regarding which statutes qualify as controlled substance offenses to support a career offender enhancement: *United States v. Miller*, No. 21-4367, 2023 WL 4673749, *11 (4th Cir. July 21, 2023) (holding that, under a categorical analysis, a conviction under North Carolina law for selling or delivering a Schedule II controlled substance under N.C Gen. Stat. § 90-95(a) qualifies as a controlled substance offense because, in part, North Carolina separately criminalizes an attempt to do the same under N.C. Gen. Stat. § 90-98) and *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023) (holding that convictions under the federal statute criminalizing drug distribution, 21 U.S.C. § 841(a)(1), qualify as controlled substance offenses, despite the definition of "deliver" including "attempted transfer.").

A United States District Court for the Eastern District of Virginia Judge recently applied *Groves* to an objection to his PSR's inclusion of a career offender enhancement pursuant to U. S. S. G.§ 4B1.1(b)(2) based on two convictions under Virginia law.  *United States v. Brown*, 3:22cr134, 2023 WL 4138244 (E.D.Va. June 22, 2023).  While not addressed by the Parties, the Court will apply these new developments in its analysis below.

[11] Section 3582(c)(1)(A) of Title 18 of the United States Code states:

The court may not modify a term of imprisonment once it has been imposed except that—
    (1) in any case—

court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).

---

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> (ii)  . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

A.     **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

In Response to Rives' Motion for Compassionate Release, the United States conceded that Rives has exhausted his administrative remedies "by requesting a reduction in sentence from the warden at FCI Petersburg" and receiving a denial of that request on July 5, 2020.  (ECF No. 86, at 4.)

B.     **Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF

No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[12]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no [active] Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist

---

[12] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283; *see also Kibble*, 992 F.3d 326 (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court).

Although there is no active United States Sentencing Commission Policy Statement, the Commission has submitted its 2023 Amendments to the Sentencing Guidelines to the United States Congress. The April 27, 2023 submission included a proposed amendment to § 1B1.13. While the 2023 Amendments are subject to Congress' 180-day review period and are not currently active, the submitted 2023 Amendments illustrate the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.

If Congress does not take action to the contrary, the 2023 Amendments will take effect November 1, 2023. The language in the 2023 Amendments § 1B1.13(b) states in relevant part:

(1) Medical Circumstances of the Defendant . . .

    (D)    The defendant presents the following circumstances–

        (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

        (iii)    such risk cannot be mitigated in a timely or adequate manner. . . .

(3) Family Circumstances of the Defendant

    (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or medical condition.

    (B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

    (D)    The defendant establishes that circumstances similar to those listed in paragraph[] . . . 3(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant. . . . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*See* United States Sentencing Commission, *Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The *McCoy* court has noted, however, that the active Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[13] *See, e.g., United States v. Fennell*, 570 F.

---

[13] As mentioned earlier, the United States Sentencing Commission 2023 Amendments provide that a "change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason" only if the defendant has served at least ten years of imprisonment. *See* United States Sentencing Commission, *Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The 2023 Amendments would also add a section (c) to § 1B1.13 which states that:

if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

*Id.*

17

Supp. 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Elzey*, No. JKB-09-0288, 2022 WL 316717, *2–3 (D. Md. Feb. 2, 2022) ("change in career offender status, and a consequent change [that dramatically lowers] the appropriate Guidelines Sentencing range can qualify as an extraordinary and compelling reason"); *United States v. Banks*, No. 3:13cr3, 2022 WL 220638, *2–3, *6 (W.D. Va. Jan 25, 2022) (holding that an 88 month difference between the low end of Bank's career offender sentencing range and the low end of the non-career offender sentencing range is "such [a] gross disparit[y] in sentencing" that it constitutes an extraordinary and compelling circumstance); *United States v. Williams*, No. 14cr428, 2021 WL 5827327, at *6–7 (finding that a difference of "more than three years longer than the high end of the guidelines" that would have applied under *Norman* warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, No. 3:11-cr-15, 2021 WL 3025459, *4 (W.D. Va. July 16, 2021) (finding a sentencing disparity of more than five years to be a "gross disparity" and an "extraordinary and compelling" reason to warrant a sentence reduction."); *but see United States v. Hinton*, No. 2:15cr80, 2022 WL 988372, *5, (E.D. Va. 2021) (holding that a three to six year sentencing disparity is "not so drastic that it constitutes an extraordinary and compelling reason for relief").

## C.     Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The

18

Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 81.) Although Rives submits, (ECF No. 81, at 3), and the United States concedes, (ECF No. 86, at 4), that he has exhausted his administrative remedies, the Court will deny the Motion for Compassionate Release upon finding that Rives does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i).

**A.      Rives' Exigent Family Circumstances and COVID-19 Do Not Amount to Extraordinary and Compelling Reasons for Release**

Rives' original Motion for Compassionate Release contends that the Court should grant his immediate release for two reasons. The first is a change in familial circumstances; his stepmother is ill and he is the only one who can care for her. Next, Rives argues that his asthma makes him particularly susceptible to complications from COVID-19. However, the record does not show that Rives is the only available caregiver for his sick stepmother, or that he faces a particular susceptibility to COVID-19 complications.

**1.      Exigent Family Circumstances**

Rives' family situation is undoubtedly difficult and puts a strain on his non-incarcerated relatives. However, Rives has not provided evidence, beyond his own assertion, that he is the

*only* available caregiver for his stepmother, a requirement contemplated by the proposed amendments to the Sentencing Guidelines. *See United States v. Holt*, No. 1:20-cr-0055-2, 2021 WL 2457064, at *6 (E.D. Va. June 16, 2021) ("While it may, perhaps, be unusual or even cumbersome for other individuals to render assistance, these circumstances do no[t] rise to the level that this Court may make the finding that Defendant is his mother's '*only*' caregiver.").

Although Rives has submitted that his sister is unable "to continue to physically and financially support . . . Rives' stepmother, their special needs sister, and her own children," (ECF No. 81, at 8), he offers no corroboration of this assertion. The Court cannot find on this record that no one other than Rives could care for his stepmother such that he should be released immediately.

### 2. COVID-19

In support of his contention that he is at heightened risk from COVID-19, Rives points to his asthma and obesity. However, Rives fails to provide any particularized details regarding the severity of his conditions. The medical records Rives places before the Court show that he has suffered from asthmatic episodes while in prison and has seen medical staff for his condition on multiple occasions. (ECF No. 90, at 24–28; ECF No. 90-2, at 13.) But with medical attention and medication, such as his Albuterol inhaler, he has swiftly recovered. (ECF No. 90, at 24; ECF No. 90-2, at 13.)

Further, asthma and obesity were highlighted as risk factors early in the pandemic, but "highly effective . . . vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." *United States v. Sanders*, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021). Rives is vaccinated. (ECF No. 81, at 9.)

Finally, as of June 28, 2023, FCI Petersburg has zero active COVID-19 cases among 1,746 inmates and zero among staff. *See* Bureau of Prisons, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html. Clearly, FCI Petersburg is not a "correctional facility affected or at imminent risk of being affected" by an ongoing outbreak of infectious disease. 2023 Amendments to the Federal Sentencing Guidelines § 1B1.13(b)(1)(D)(ii) (submitted to Congress Apr. 28, 2023).

The Court recognizes the grave health risks prisoners have faced during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, Rives has been fully vaccinated and treated for asthma, and based on current COVID-19 trends, the United States Department of Health and Human Services allowed the federal Public Health Emergency for COVID-19 to expire on May 11, 2023.[14] Considering the foregoing, the Court concludes that the current record does not justify Rives' immediate release from federal imprisonment due to risks from COVID-19.

**B.     The Disparity Between Rives' Current Sentence and the Sentence He Would Receive Today is Not an Extraordinary and Compelling Reason for Relief**

**1.     *Norman***

In his first supplemental briefing, Rives seeks relief based on the Fourth Circuit's ruling in *Norman* arguing that, under *Norman*, Rives would no longer qualify as a career offender and noting that the Court previously denied Rives' requests for sentence reductions because of his career offender status. (ECF No. 94.)

---

[14] https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:
~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023.

In *Norman*, the Fourth Circuit considered whether a conviction for conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. § 846, qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2. 935 F.3d at 238; *see also Williams*, 2021 WL 5827327, at \*4 (citing *Norman*, 935 F.3d at 238) ("The Fourth Circuit employed a categorical approach in determining that such a conviction is not a 'controlled substance offense' because a conspiracy under § 846 does not require an overt act and thus 'criminalizes a broader range of conduct than that covered by generic conspiracy' referred to in § 4B1.2.")). The *Norman* decision highlighted that the defendant there "concede[d] that *actual possession* of cocaine and cocaine base with intent to distribute qualifies as a controlled substance offense."[15] *Norman*, 935 F.3d at 237 (emphasis added).

The historical convictions that supported the career offender enhancement application against Rives were one conviction of Conspiracy to Distribute Cocaine and two convictions of

---

[15] At the time *Norman* was decided, the Fourth Circuit had issued previous decisions finding that Virginia Code §§ 18.2-248 and 18.2-248.1, which Rives' possession with intent to distribute offenses violated, qualified as controlled substance offenses. *United States v. Ward*, 972 F.3d 364, 367 (4th Cir. 2020); *United States v. Guerrant*, 849 F. App'x 410, 412 (4th Cir. 2021) (unpublished).

Some dissonance between the *Campbell* (analyzing a West Virginia statute) and the *Ward* (analyzing the Virginia statute) decisions seems to exist given the similarity of the two laws. *See United States v. Brown*, No. 3:22cr134, 2023 WL 4138244, at \*2-5 (E.D. Va. June 22, 2023). Indeed, the 2017 *Dozier* case, decided five years before *Campbell*, presumed—contrary to *Campbell*—that a conviction under the same W. Va. Code § 60A-4-401(a) did indeed "qualif[y] as a controlled substance offense" under the Sentencing Guidelines. *United States v. Dozier*, 848 F.3d 180, 188 (4th Cir. 2017).

Additionally, as will be discussed, *Groves* adds a layer of complexity in the *Ward* and *Campbell* career offender predicate offense discussion. *See Brown*, 2023 WL 4138244, at \*5 (describing a "tangle of cases"). Indeed, in *United States v. Miller*, the Fourth Circuit reviewed a North Carolina conviction for selling or distributing Schedule II controlled substances that served as a controlled substance predicate for Miller's career offender status. 2023 WL 4673749, at \*11. This conclusion rested on an analysis of the words "distribute," "deliver," and "transfer" within the West Virginia and Virginia statutes, especially their proximity to the placement of "attempt" in each statute.

Possession of Controlled Substance With Intent to Distribute (one for cocaine and one for marijuana) in violation of Va. Code Ann. §§ 18.2-248 and 18.2-248.1. (ECF No. 30, at 12, 16.) As such, Rives has one Conspiracy to Distribute Cocaine conviction that would falter as a predicate offense under *Norman*. But Rives also has two *actual* possession with intent to distribute convictions that undergird his career offender status, so *Norman* alone does not alter his status. However, the finding that *Norman* is inapt does not end this Court's inquiry.

## 2. *Campbell*

Rives' additional supplement argues that the Fourth Circuit's decision in *Campbell* supports the proposition that his *actual* possession with intent to distribute convictions similarly do not qualify as "controlled substance offenses." 22 F.4th at 440.

In *Campbell*, the Fourth Circuit reviewed the sentencing of a defendant who received the career offender enhancement based on convictions for the delivery of crack cocaine in violation of West Virginia Code § 60A-4-401(a). 22 F.4th at 441. While U.S.S.G. § 4B1.2 includes the "distribution[] or dispensing of a controlled substance" in its definition of a "controlled substance offense," West Virginia Code § 60A-4-401(a), through its definition section 60A-1-101(h), criminalizes the "actual, constructive *or attempted* transfer from one person to another of" controlled substances. *Id.* at 441–42. The *Norman* Court employed a categorical approach in determining that the West Virginia conviction could not support a career offender enhancement. *Id.*

To reach this conclusion, the Fourth Circuit first determined that inchoate crimes are not "controlled substance offenses." The *Campbell* Court "found that commentary to U.S.S.G. § 4B1.2(b) included inchoate offenses under its definition of 'controlled substance offenses,' but, by doing so, the commentary improperly expanded the definition of the Guideline section itself,

which did not contain the word 'attempt.'" *Brown*, 2023 WL 4138244, at *3. The Fourth Circuit noted that when the commentary is inconsistent with the Guideline, the Guideline controls. *Id.* (citing *Campbell*, 22 F.4th at 447).

The Fourth Circuit then determined that the West Virginia offense in question was an inchoate offense of attempt because the "'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense.'" *Campbell*, 22 F.4th at 441–42. The Fourth Circuit reached this conclusion despite an earlier Fourth Circuit decision, *United States v. Dozier*, 848 F.3d 180, 188 (4th Cir. 2017), finding that West Virginia Code § 60A-4-401(a) does qualify as a "controlled substance offense." *Brown*, 2023 WL 4138244, at *4. "*Campbell* found that *Dozier*'s holding did not prevent it from coming to the opposite *conclusion* concerning the same statute . . . because 'the question . . . before [the Fourth Circuit in *Campbell*] was not at issue in [*Dozier*].'" *Id.*

Rives submits that a District Judge for the United States District Court for the Eastern District of Virginia agreed with a defendant at sentencing who argued that his convictions for possession of controlled substances with the intent to distribute in violation of Virginia law do not constitute "controlled substance offenses" under *Campbell* because Virginia's statute similarly criminalizes attempted distribution. (ECF No. 109 (citing *United States v. Howell*, No. 3:22cr68 (E.D. Va. Jan. 19, 2023)).

Rives' convictions for Possession of Controlled Substance With Intent to Distribute were in violation of Virginia Code §§ 18.2-248 and 248.1. (ECF No. 30, at 12, 16.) This Virginia statute is very similar to West Virginia Code § 60A-1-101(h) in that "delivery" includes

"attempted transfer."[16] Judges in this district previously found that because Virginia Code

§ 18.2-248 mirrors West Virginia Code § 60A-1-101(h) in criminalizing the *attempted* transfer of

controlled substances, the Fourth Circuit's ruling in *Campbell* dictates that possession with intent

to distribute convictions under the Virginia statute no longer qualify as "controlled substance

offenses." *See e.g.*, *United States v. Davis*, No. 4:22cr57 (E.D. Va. Feb. 27, 2023); *United States

v. Cradle*, 3:22cr99 (E.D. Va. Feb. 23, 2023); *Howell*, No. 3:22cr68 (E.D. Va. Jan. 19, 2023).

### 3.   *Groves*

The Fourth Circuit has addressed this issue in two cases that post-date *Campbell*. In the

first of those decisions, *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023), the Fourth Circuit

addressed whether certain federal convictions qualify as controlled substance offenses for

purposes of the career offender enhancement. While not addressed by the Parties in their

briefing, this recent case is necessary to the Court's analysis.

---

16

| West Virginia<br>(§§ 60A-4-401(a), § 60A-1-101(h)) | Virginia<br>(§§ 18.2-248(A), 248.1, 54-1-3400) |
|---|---|
| (a) Except as authorized by this act, it is unlawful for any person to manufacture, **deliver**, or possess with intent to manufacture or deliver a controlled substance.<br><br>(h) "**Deliver**" or "**delivery**" means the actual, constructive, **or attempted transfer** from one person to another of: (1) A controlled substance, whether or not there is an agency relationship; (2) a counterfeit substance; or, (3) an imitation controlled substance. | A. Except as authorized in the Drug Control Act (§ 54.1-3400 et. seq.), it shall be unlawful for any person to manufacture, sell, give, **distribute**, or possess with intent to manufacture, sell, give, or distribute a controlled substance or an imitation controlled substance.<br><br>"**Distribute**" means to **deliver** other than by administering or dispensing a controlled substance.<br><br>"**Deliver**" or "**delivery**" means the actual, constructive, **or attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship. |

In *Groves*, the predicate conviction was for the federal crime of aiding and abetting "in a 21 U.S.C. § 841(a)(1) offense involving the distribution of cocaine base." 65 F.4th at 168. 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to . . . distribute . . . a controlled substance." *Id.* The term "distribute" is defined as "to deliver (other than by administering or dispensing) a controlled substance." *Id.* at 172 (quoting 21 U.S.C. § 802(11)). The term "deliver" is defined as the "actual, constructive[,] or attempted transfer of a controlled substance." *Id.* at 172 (quoting 21 U.S.C. § 802(8)). The defendant argued that "21 U.S.C. § 841(a)(1)[] similarly criminalizes the attempt offense of attempted delivery," which would disqualify it as a "controlled substance offense" under *Campbell*. *Id.*

The Fourth Circuit "rejected that argument and, instead, joined the Third, Sixth, and Eleventh Circuits in concluding that an attempted *transfer* under § 841 is not an attempted *deliver under* § 841(a)(1) and 'analogous state drug distribution statutes.'" *Brown*, 2023 WL 4138244, at *4 (quoting *Groves*, 65 F.4th at 172). In other words, attempted transfer under the federal statute is not an inchoate offense as referred to in *Campbell* and, therefore, 21 U.S.C. § 841(a)(1) is a "controlled substance offense" that can support a Career Offender Enhancement.

The *Groves* Court noted that the West Virginia statute at issue in *Campbell* was similar to § 841(a)(1) but explained that the West Virginia scheme was materially different from the federal scheme because the federal scheme criminalizes attempt offenses separately from completed drug distribution offenses. *Brown*, 2023 WL 4138244, at *4 (citing *Groves*, 65 F.4th at 173). In addressing the defendant's arguments that West Virginia *does* criminalize attempt offenses separately from completed drug distribution offenses, the Fourth Circuit surmised that the *Campbell* court "might have been wrong but the [*Groves* Court] . . . had no authority to overturn the *Campbell* panel's work." *Id*, at n.5 (citing *Groves*, 65 F.4th at 174).

26

Under *Groves*, the Virginia statutes that undergird Rives' possession with intent to distribute offenses support the application of the Career Offender Enhancement because Virginia law, like federal law, provides for a separate 'attempt' offense for distribution. *See id*, at 5. (citing Va. Code Ann. § 18.2-257). In addition, the Virginia statute is more similar to the federal statute than the West Virginia statute, which directly "defines the core crime in terms of 'deliver' . . . without any leapfrogging, to include 'attempted transfer.'"[17] *Brown*, 2023 WL 4138244, at *5.

---

[17]

| West Virginia (§§ 60A-4-401(a), § 60A-1-101(h)) | Federal (21 U.S.C. §§ 841(a), 802) | Virginia (§§ 18.2-248(A), 248.1, 54-1-3400) |
| --- | --- | --- |
| (a) Except as authorized by this act, it is unlawful for any person to manufacture, **deliver**, or possess with intent to manufacture or deliver a controlled substance<br><br>(h) "Deliver" or "delivery" means the actual, constructive, **or attempted transfer** from one person to another of: (1) A controlled substance, whether or not there is an agency relationship; (2) a counterfeit substance; or, (3) an imitation controlled substance. | (a) Unlawful Acts.  Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . (1) to manufacture, **distribute**, or dispense, or possess with intent to manufacture, **distribute**, or dispense, a controlled substance.<br><br>The term "**distribute**" means to **deliver** (other than by administering or dispensing) a controlled substance or a listed chemical."<br><br>The terms "**deliver**" or "**delivery**" mean the actual, constructive, **or attempted transfer** of a controlled substance or a listed chemical. | A. Except as authorized in the Drug Control Act (§ 54.1-3400 et. seq.), it shall be unlawful for any person to manufacture, sell, give, **distribute**, or possess with intent to manufacture, sell, give, or **distribute** a controlled substance or an imitation controlled substance.<br><br>"**Distribute**" means to **deliver** other than by administering or dispensing a controlled substance.<br><br>"**Deliver**" or "**delivery**" means the actual, constructive, **or attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship. |

4.   *Miller*

In the Fourth Circuit's second decision addressing this issue after *Campbell*, *United States v. Miller*, No. 21-4367, 2023 WL 4673749 (4th Cir. July 21, 2023), the Fourth Circuit applied *Groves*' reasoning to conclude that North Carolina's drug distribution statute is a controlled substance offense under the sentencing guidelines.

In *Miller*, the predicate conviction was under N.C. Gen. Stat. § 90-95(a)(1), "which makes it unlawful for a person to 'sell or deliver . . . a controlled substance.'" 2023 WL 4673749, at *10 (alteration in original). The *Miller* Court noted that the North Carolina statute was similar to the federal statute at issue in *Groves* because North Carolina "defines 'deliver' as 'the actual[,] constructive, or attempted transfer from one person to another of a controlled substance.'" *Id.* (quoting N.C. Gen. Stat. § 90-87(7)) (alteration in original). In addition, the North Carolina statute, like the federal statute, "separately criminalizes attempt offenses from drug offenses," such that construing § 90-95(a)(1) to include attempt offenses would render the attempt statute superfluous. *Id.* Thus, the *Miller* Court reached the same conclusion the *Groves* Court had, and determined the North Carolina drug distribution statute constituted a controlled substance offense under the sentencing guidelines. *Id.* at *11.

*Miller* provides further support that the Virginia statutes that undergird Rives' possession with intent to distribute offenses support the application of the Career Offender Enhancement because the *Groves* Court's rationale is applied to a state statute, rather than the federal statute.[18]

---

[18]

| West Virginia (§§ 60A-4-401(a), § 60A-1-101(h)) | Federal (21 U.S.C. §§ 841(a), 802) | Virginia (§§ 18.2-248(A), 248.1, 54-1-3400) | North Carolina (§§ 90-95(a)(1), 90-87(7)) |
|---|---|---|---|
| (a) Except as authorized by this act, it is unlawful for any person to manufacture, **deliver**, or possess with intent to manufacture or deliver a controlled substance

(h) "Deliver" or "delivery" means the actual, constructive, **or attempted transfer** from one person to another of: (1) A controlled substance, whether or not there is an agency relationship; (2) a counterfeit substance; or, (3) an imitation controlled substance. | (a) Unlawful Acts. Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . (1) to manufacture, **distribute**, or dispense, or possess with intent to manufacture, **distribute**, or dispense, a controlled substance.

The term "**distribute**" means to **deliver** (other than by administering or dispensing) a controlled substance or a listed chemical."

The terms "**deliver**" or "**delivery**" mean the actual, constructive, **or attempted transfer** of a controlled substance or a listed chemical. | A. Except as authorized in the Drug Control Act (§ 54.1-3400 et. seq.), it shall be unlawful for any person to manufacture, sell, give, **distribute**, or possess with intent to manufacture, sell, give, or **distribute** a controlled substance or an imitation controlled substance.

"**Distribute**" means to **deliver** other than by administering or dispensing a controlled substance.

"**Deliver**" or "**delivery**" means the actual, constructive, **or attempted transfer** of any item regulated by this chapter, whether or not there exists an agency relationship. | (a) Except as authorized by this Article it is unlawful for any person: (1) To manufacture, sell or **deliver**, or possess with intent to manufacture, sell or deliver, a controlled substance.

"**Deliver**" or "**delivery**" means the actual constructive, or **attempted transfer**, from one person to another of a controlled substance, whether or not there is an agency relationship. |

29

In addition, the Court agrees with the sentiment posed in *Brown*: "the statutory framework of all [four] jurisdictions . . . are nearly identical [and y]et, they have been accorded different interpretations [in the Fourth Circuit]" that might only be reconciled via this reading.   2023 WL 4138244, at \*5.  In any event, "[i]t is the rule in this circuit that, where there are irreconcilable conflicting opinions on a point from the Court of Appeals, district courts are to follow the first decision." *Brown*, 2023 WL 4138244, at \*5.  The Court will therefore follow the pre-*Campbell* decisions that found that the Virginia statutes that undergird Rives' possession with intent to distribute offenses support the application of the Career Offender Enhancement.  *Ward*, 972 F.3d at 367; *Guerrant*, 849 F. App'x at 412.

Because Rives' possession with attempt to distribute convictions, in violation of Virginia Code § 18.2-248 and 18.2-248.1, qualify as "controlled substance offenses" to support a career offender enhancement, Rives would not face any sentencing disparity if sentenced today. Accordingly, the Court concludes that *Norman* and *Campbell* do not provide an extraordinary and compelling reason to justify Rives' immediate release from federal imprisonment.

### C.      The 3553(a) Factors Do Not Support a Reduction in Rives' Sentence

Although the Court has found there are no extraordinary and compelling reasons to warrant Rives' release, the Court will nonetheless consider Rives' request under the applicable statutory sentencing factors articulated in 18 U.S.C. § 3553(a).

Upon review, the number of separate drug offenses involved in Rives' underlying offense (three interactions with law enforcement over a seven-month period) demonstrate that he presents a threat to the public through his disregard for the law.  Rives' criminal history also demonstrates his lack of respect for the law and a high risk of recidivism.  Rives has an extensive criminal history, including prior drug offenses, eluding arrest, obstructing justice, receiving

stolen goods, assault and battery, petit larceny, identity fraud, and statutory burglary. (ECF
No. 30, at 8–30.) Rives also committed the underlying offenses while on supervised release for
his previous convictions. (ECF No. 30, at 27.)

Further, Rives does not propose conditions of release that would protect the safety of the
community. Rives' release plan is to live with his stepmother in her home in Petersburg,
Virginia. (ECF No. 81, at 13.) This does not convince the Court that Rives will not pose a
danger to the public or that the safety of the community will be protected. Rives was living with
his stepmother when he committed many of the offenses in his criminal history. The Court thus
finds that the nature and circumstances of Rives' offense, the totality of his record, and the need
to protect the public outweigh granting his request for immediate release.

Rives next avers that his history and characteristics while incarcerated demonstrate his
rehabilitation. Rives highlights his participation in BOP programming including drug abuse
programs and programs "designed to prepare him for his re-entry to society, such as job search
and interview skills, budgeting skills, parenting courses, and courses in psychology." (ECF No.
81, at 11; ECF No. 84-1.) In *United States v. Martin*, the Fourth Circuit vacated and remanded
the district court's denial of both defendants' motions to reduce sentence because the district
court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–
98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the
district court must give weight to the person's "past transgressions" as well as "the multitude of
redemptive measures that [the person] has taken." *Id.* at 397. However, Congress has made
clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and
compelling reason." 28 U.S.C. § 994(t). With these dictates in mind, the Court acknowledges

31

and commends Rives' participation in BOP programs, but these measures do not warrant his immediate release in light of the nature and circumstances of his underlying conviction.

In addition, Rives' eight disciplinary reports from the nearly nine years he has been incarcerated give pause. (ECF No. 90-5.) Rives was sanctioned for refusing to obey an order, possessing an unauthorized item, failing to follow safety regulations, fighting with another person, refusing a work/program assignment three times, disruptive conduct, and giving or accepting money without authorization. (ECF No. 90-5.) While the most recent of these infractions was in May of 2020, the Court considers this as part of the whole it must weigh when assessing this request. (ECF No. 90-5.)

## IV. Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate Release. (ECF No. 81.)

An appropriate Order shall issue.

Date: 8/3/2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

32